<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RONALD J. BARBER, : | |
| Plaintiff, : | Civil No. 12-2578 (SRC) |
| v. : | |
| LT. J. JONES, et al., : | **OPINION** |
| Defendants. : | |

**APPEARANCES:**

> RONALD J. JONES, Plaintiff <u>pro</u> <u>se</u>
> #000104
> East Jersey State Prison - Special Treatment Unit
> 8 Production Way CN-905
> Avenel, New Jersey 07001

**CHESLER**, District Judge

Plaintiff, Ronald J. Barber, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, confined at the Special Treatment Unit at the East Jersey State Prison ("EJSP-STU"), at the time he submitted the above-captioned Complaint for filing, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B), to determine whether the pleading should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that this action should be dismissed without prejudice.

## I.  BACKGROUND

Plaintiff, Ronald J. Barber ("Plaintiff"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Lt. J. Jones and John and Jane Does 1-10. (Complaint, Caption, ¶ 4b.)  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff, a civilly committed sexually violent predator ("SVP"), alleges that, on February 12, 2012, he was "used" by defendant, Lt. Jones, to get another correctional officer (second shift Officer Rembert) fired.  Since that date, Lt. Jones and others allegedly have been subjecting Plaintiff to harassment, indirect threats and humiliation.  In particular, on April 24, 2012, after Plaintiff was returning from the yard,  Officer Yaniero and Officer Sanchuck pulled Plaintiff aside, pat searched him and cuffed Plaintiff, taking Plaintiff to the South unit for

2

a strip search in front of other residents. Plaintiff alleges that this was done by direction of Lt. Jones. Plaintiff's room was then searched and allegedly ransacked by Sgt. Davis and Officers Bank and Maurice. The next day, Plaintiff went to the yard and asked another officer about the incident and allegedly was told that the search of Plaintiff and his room was authorized by Lt. Jones. (Complaint, ¶ 6, Statement of Claims.)

Plaintiff generally alleges that he was harassed, humiliated and degraded in violation of his Eighth Amendment rights. (Id.) He seeks a transfer from the EJSP-STU and an unspecified amount in compensatory damages. (Compl., ¶ 7.)

On or about May 11, 2012, this Court received Plaintiff's "addendum" to his Complaint. (Docket entry no. 3.) The allegations pertain to two other residents, Rafieek Graham and Thaddeus Thomas, who allegedly are witnesses to Plaintiff's action. Plaintiff also states that these two residents have helped Plaintiff with this case. Apparently, resident Graham was placed on lockdown status for being out of place. (Id.) On May 8, 2012, Plaintiff called the Internal Affairs Division at EJSP and spoke to Mrs. Madden to complain about Lt. Jones' harassment of Plaintiff and his two witnesses Graham and Thomas. Mrs. Madden allegedly told Plaintiff to file a grievance and send it to the Internal Affairs Division, and then hung up on Plaintiff. (Id., pg. 4.)

3

On or about August 17, 2012, Plaintiff filed an amended Complaint (Docket entry no. 4), adding Steve Johnson, the Assistant Superintendent at EJSP-STU; Major Burns, Shift Commander; and A. Butler, Correctional Officer as defendants in this matter.  (Amended Complaint, Caption, ¶¶ 4b, 4c, 4d.) Specifically, Plaintiff alleges that Butler is the officer who called Plaintiff downstairs per Lt. Jones' orders to "set up another correction officer" and now indirectly threatens Plaintiff because he is exercising his First Amendment rights. (Id., ¶ 4b.)  He next alleges that Major Burns "overlook[ed] and disregard[ed] the grievances ... [t]elling other officers to monitor and harass [Plaintiff] by any means necessary because this other correction officer (SCO Rembert) may find this lawsuit revealing what exactly happened and why he got fired."  (Id., ¶ 4c.)  Finally, as to Asst. Superintendent Johnson, Plaintiff alleges that Johnson "fail[ed] to correct or oversee the abuse of authority that his correction officers are doing, and [failed to] investigat[e] the grievances and complaints that [Plaintiff has] been constantly filing."  (Id., ¶ 4d.)

On December 3, 2012, Plaintiff filed an application for appointment of counsel with exhibits.  (Docket entry nos. 5 and 6.)  The exhibits to the application are mostly illegible copies of grievance forms, some having responses from administration.  A review of the legible copies show that they do not relate to the

4

allegations of the Complaint, and deal with issues concerning group treatment based on Plaintiff's failure to attend, Plaintiff's general complaint that he is housed in a prison setting rather than a treatment facility, and several complaints concerning intermittent power shut offs and having to wait five extra minutes for showers after count. (Docket entry no. 6.) Plaintiff seeks appointment of counsel because he is not trained in the law and does not have access to the law library. (Docket entry no. 5.)

On December 31, 2012, this Court received another "addendum" submitted by Plaintiff. (Docket entry no. 7.) Again, the addendum contains mostly illegible grievances that appear unrelated to the claims at issue in this litigation. Finally, on January 2, 2013, Plaintiff submitted a motion to amend his Complaint (Docket entry no. 8), and a handwritten addendum related to his proposed amendment. (Docket entry no. 9.) In his motion to amend the Complaint, Plaintiff seeks to add new defendants, SCO A. Ware-Cooper, SCO M. Wyatt, and SCO R. Hall, all correctional officers at EJSP-STU. Plaintiff alleges generally that these new defendants verbally harass him for filing grievances. Specifically, Plaintiff alleges that these three new defendants tell the shift kitchen officer to "crack down" on Plaintiff so as to provoke Plaintiff to "get fed up and fired." (Amended Complaint at ¶ 4d.) Plaintiff's "addendum"

(Docket entry no. 9) reiterates these general claims of verbal harassment by the new defendants and alleges that Plaintiff has brought these grievances to the attention of Assistant Superintendent Steve Johnson to no avail.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal,

556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the
Federal Rules of Civil Procedure which provides that a complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).
Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S.
544 (2007) for the proposition that "[a] pleading that offers
'labels and conclusions' or 'a formulaic recitation of the
elements of a cause of action will not do,'" Iqbal, 556 U.S. at
678 (quoting Twombly, 550 U.S. at 555), the Supreme Court held
that, to prevent a summary dismissal, a civil complaint must now
allege "sufficient factual matter" to show that the claim is
facially plausible.  This then "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203 (3d
Cir. 2009)(citing Iqbal, 556 U.S. at 676).  The Supreme Court's
ruling in Iqbal emphasizes that a plaintiff must demonstrate that
the allegations of his complaint are plausible.  See id. at 678-
79; see also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp.
v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).  "A complaint must
do more than allege the plaintiff's entitlement to relief.  A
complaint has to 'show' such an entitlement with its facts."
Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny,
515 F.3d 224, 234-35 (3d Cir. 2008).  See also Argueta v. U.S.
Immigration & Customs Enforcement, 643 F.3d 60, 73 (3d Cir.

2011); <u>Bistrian v. Levi</u>, 2012 WL 4335958, *8 (3d Cir. Sept. 24, 2012)(allegations that are no more than conclusions are not entitled to the assumption of truth; a court should "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'")(quoting, <u>Iqbal</u>, 556 U.S. at 679).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994). <u>See also</u> <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

IV.   <u>ANALYSIS</u>

A.   <u>Harassment Claim</u>

Plaintiff first alleges an Eighth Amendment violation of harassment.  However, as a civilly committed person, the Fourteenth Amendment's Due Process Clause applies.  See <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."); <u>see also</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979); <u>Hubbard v. Taylor</u>, 399 F.3d 150, 166 (3d Cir. 2005).[1]

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, <u>Bell</u>, 441 U.S. at 536,[2] within the bounds of professional discretion, <u>Youngberg</u>, 457 U.S. at 321-22.

---

[1]  "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." <u>Bell v. Wolfish</u>, 441 U.S. at 537, n. 16 (quoting <u>Ingraham v. Wright</u>, 430 U.S. 651, 671-72, n. 40 (1977)); <u>see also</u> <u>City of Revere v. Massachusetts General Hospital</u>, 463 U.S. 239, 244 (1983).

[2]  In <u>Bell v. Wolfish</u>, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties.  Id. at 307. The Constitution is not concerned with de minimis restrictions on patients' liberties.  Id. at 320.  Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed."  Seling v. Young, 531 U.S. 250, 265 (2001).  While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs.  See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Further, as the Supreme Court explained the objective reasonableness test of the Fourteenth Amendment,

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

The Supreme Court noted that the maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of ... retained constitutional rights." Bell, 411 U.S. at 546. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. "In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)).

The Court of Appeals for the Third Circuit summarized the holding of Bell as follows:

> [A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.

Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007)(citation and internal quotation marks omitted). Moreover, the Third Circuit "distilled the Supreme Court's teachings in Bell into a two-part

11

test.  "We must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes."  Hubbard, 538 F.3d at 232 (citation and internal quotation marks omitted).  The Court of Appeals further explained that the Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains an objective component, as well as a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components.  As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 [](1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"  Id. at 298 ....  The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson, 495 F.3d at 68.  See also Bistrian, 2012 WL 4335958 at *15-16. As a

Here, Plaintiff's general allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee, civilly committed person, or sentenced prisoner.  See Jean-Laurent v. Wilkerson, 438 F. Supp.2d 318, 324-25 (S.D.N.Y. 2006)(pretrial detainee's claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); Ramirez v. Holmes, 921 F.

12

Supp. 204, 210 (S.D.N.Y. 1996)(threats and verbal harassment without physical injury or damage not cognizable in claim filed by sentenced inmate under § 1983).  See also Price v. Lighthart, 2010 WL 1741385 (W.D. Mich. Apr. 28, 2010); Glenn v. Hayman, 2007 WL 894213, *10 (D.N.J. Mar. 21, 2007); Stepney v. Gilliard, 2005 WL 3338370 (D.N.J. Dec. 8, 2005)("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone ... no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp.2d 241, 244 (D.Me. 2005)).  See also Moore v. Morris, 116 Fed. Appx. 203, 205 (10th Cir. 2004)(mere verbal harassment does not give rise to a constitutional violation, even if it is inexcusable and offensive, it does not establish liability under section 1983), cert. denied, 544 U.S. 925 (2005); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187–89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 WL 1532496 (E.D. Pa. June 29, 2005)("It is well established ... that ... verbal

harassment, ... standing alone, do[es] not state a constitutional claim")(citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D.Pa. 1995)).  See also Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (holding that verbal harassment and abuse are not recoverable under § 1983); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987)(holding that racially derogatory remarks, although "unprofessional and inexcusable," are not "a deprivation of liberty within the meaning of the due process clause").

Further, in this case, Plaintiff does not allege an accompanying violation that might allow the general verbal harassment to state a separate due process violation or equal protection claim.  Moreover, Plaintiff does not allege any "injury."  Therefore, his allegations of harassment are nothing more than the mere recitation of a legal conclusion without factual allegations sufficient at this time to support a claim that the defendants were verbally harassing Plaintiff as a form of punishment.  Consequently, because the alleged verbal harassment of Plaintiff is not accompanied by any injurious actions - or physical actions of any kind - by the correction officials named, Plaintiff fails to state a cognizable § 1983 claim for a violation of his Fourteenth Amendment due process or Fourteenth Amendment equal protection rights, and this action

will be dismissed accordingly as against all named defendants in the initial Complaint and the amended Complaint.

At best, Plaintiff alleges that he was subjected on one occasion to a room search and a strip search after he was returning to his unit from yard exercise, and that his room was searched on that same occasion.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988)(quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose.  Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy."  Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted).  The same conclusion was reached with respect to pretrial detainees other than convicted prisoners.  See Bell v. Wolfish, 441 U.S. 520, 558-560 (1979)(finding that a body cavity searches of pretrial detainees do not violate the Fourth Amendment).

In Bell v. Wolfish, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body.  In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  441 U.S. 520, 559 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest); Brown

16

v. Blaine, 185 Fed. Appx. 166 (3d Cir. June 16, 2006)(three strip searches alleged to be unsanitary, demeaning and humiliating held to be constitutional); Del Raine v. Williford, 32 F.3d 1024, 1038-41 (7th Cir. 1994)(rejecting claim that rectal probe performed in lobby area of prison hospital was "unnecessarily brutal, painful, and humiliating"); Michenfelder v. Sumner, 860 F.2d 328, 332-34 (9th Cir. 1988)(upholding policy of conducting visual body cavity searches every time prisoner leaves or returns to maximum security unit or moves within unit).

Involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some protection under the Fourth Amendment, but they do not have an expectation of privacy equal to an individual in society generally.  See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness); Allison v. Snyder, 332 F.3d 1076-79 (7th Cir.2003)(SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished"); Aiken v. Nixon, 236 F. Supp.2d 211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003); see also, Jennings v. New York State Office of Mental Health, 786 F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d Cir. 1992); Belton v. Singer, 2011 WL 2690595, *8 (D.N.J. July 8,

17

2011).  The reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry.  <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir. 2004).

More recently, the Supreme Court re-emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." <u>Florence v. Bd. of Chosen Freeholders of County of Burlington</u>, --- U.S. ----, ----, 132 S.Ct. 1510, 1517, 182 L.Ed.2d 566 (2012).  Where security is involved, "deference must be given to the officials in charge of the jail unless there is substantial evidence demonstrating their response to the situation is exaggerated." <u>Id</u>. at 1518 (citation and internal quotation marks omitted).  Thus, in <u>Florence</u>, the Supreme Court held that a jail policy of requiring that persons admitted to a jail remove their clothing and expose their genital areas for visual inspection as a routine part of the intake process does not violate the Fourth Amendment.  <u>See</u> <u>Florence</u>, --- U.S. ----, 132 S.Ct. 1510, 182 L.Ed.2d 566.

Consequently, even if strip searches were conducted repeatedly or unnecessarily, there is no Fourth Amendment violation if plaintiff cannot show that the strip searches were conducted in an unreasonable manner.  <u>See</u> <u>Wilson v. Shannon</u>, 982 F. Supp. 337, 339 (E.D.Pa. 1997); <u>Collins v. Derose</u>, 2009 WL 812008, at *5 (M.D.Pa. March 26, 2009).  <u>See also</u> <u>Florence</u>, 566

18

U.S. ----, 132 S.Ct. 1510, 182 L.Ed.2d 566; United States v. Whitted, 541 F.3d 480, 486 (3d Cir.2008).

Applying the balancing test employed by Wolfish, and re-emphasized in Florence, this Court finds, that a strip search conducted on residents upon returning from yard time, where residents may come into contact with others, is plainly reasonable and does not violate Plaintiff's Fourth Amendment rights.  See Semler v. Ludeman, 2010 WL 145275, at *19 (D. Minn. Jan.8, 2010)(finding no Fourth Amendment violation where plaintiffs were required to submit to pat searches following gym use and kitchen work assignments; search was "not highly intrusive" and was "not unlike the scope of searches of the general public at airport security checkpoints); see also Serna, 567 F.3d at 955-56 (upholding reasonableness of a facility-wide visual body cavity search after contraband was found, because, while invasive, the searches were conducted privately, safely, and professionally, and the facility was reacting to a recurring problem involving contraband cell phones).

In this action, Plaintiff does not allege that the guards used physical force or that the single strip search was conducted in a menacing manner.  See Kitchens v. Mims, 2010 WL 1240980 (E.D.Cal. March 25, 2010).  Consequently, the single strip search does not rise to the level of constitutional magnitude.  The strip search was done after Plaintiff had been to the yard with exposure to other prisoners.  While Plaintiff alleges that the

strip search was not performed in a private area, he does not allege any physical force was used, or that it was conducted solely for the purpose of punishment.  Thus, other than Plaintiff's bald claim that the strip search was directed by Lt. Jones, there is no allegation or evidence to show that the strip search was conducted solely for punitive purposes.  Rather, it is evident that the search was conducted as a security measure after Plaintiff had returned from the yard where he had contact with others.  See, e.g., Allison, 332 F.3d at 1076-79; Michenfelder, 860 F.2d at 332-34.  Similarly, the sole search of Plaintiff's room is not actionable because Plaintiff does not have a legitimate expectation of privacy in a confined institution with reasonable security and safety concerns.  Therefore, because Plaintiff does not allege facts showing that he was strip searched in a manner or purpose that was so outside the scope of reasonable search policy that it would rise to the level of a Fourth Amendment violation, this Court will dismiss Plaintiff's § 1983 strip search claim for failure to state a claim upon which relief may be granted.  See Aruanno v. Allen, 2012 WL 4320446 (3d Cir.2012)(citing Florence, 132 S.Ct. at 1517); McKnight v. Taylor, 2012 WL 5880331, *5 (D.N.J. Nov. 20, 2012).  However, this dismissal is without prejudice to Plaintiff seeking to re-

open his case with an amended Complaint alleging additional facts to support an unlawful search claim.[3]

B. Retaliation Claim

Plaintiff also alleges that defendants have violated his First Amendment right to seek redress for grievances by defendants' acts of retaliation against him. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); see also Bistrian, 2012 WL 4335958 at *18; Mitchell v. Horn, 318 F.3d 523, 529-31 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-26 (3 Cir. 2000). To prevail on a retaliation claim, Plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990)(footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id. Moreover, Plaintiff is cautioned that the filing of "addendums" or attachments and exhibits of grievances, as he has done in this case, does not suffice as a proper amendment, nor does it satisfy the pleading requirement of Fed.R.Civ.P. 8, which requires a short an plain statement of the grounds for relief. Accordingly, the Court emphasizes that such "addendums" will be rejected as an insufficient pleading.

"sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser, 241 F.3d at 333 (3d Cir. 2001)(quoting Allah, 229 F.3d at 225.

The plausibility of Plaintiff's allegation as to the first factor can not be disputed as Plaintiff has engaged in the filing of civil complaints in federal court concerning the conditions of his civil commitments, as well as this present action.[4]  However, Plaintiff fails to allege facts sufficient to create a plausible inference that he has in fact been the subject of a concerted retaliatory effort.  Namely, with the exception of a single strip search that does not appear to be related to a retaliatory response, Plaintiff makes only a bald, conclusory statement that he has been the subject of retaliation and has been otherwise verbally harassed without indicating any actual incidents of harassment/retaliation of constitutional magnitude that served to deter him from filing continual grievances and complaints. Moreover, the exhibits or addendums that Plaintiff has improperly submitted to this Court do not support a claim of retaliation.

---

[4]  Plaintiff has filed several actions concerning the conditions or place of his civil commitment, which were dismissed or administratively terminated.  See Barber v. Christie, et al., Civil No. 10-1888 (SRC)(dismissed for failure to state a claim); Barber v. Sharpe, et al., Civil No. 10-5286 (PGS)(dismissed for failure to state a claim); Barber v. Doag, et al., Civil No. 11-3670 (SRC)(administratively terminated for insufficient in forma pauperis application).

Finally, Plaintiff's allegations concerning the treatment of other residents, namely, Graham and Thomas, are insufficient to support a retaliation claim against Plaintiff.  This Court takes judicial notice of Mr. Graham and Mr. Thomas' history of litigation before this Court, in particular, Graham, et al. v. Ottino, et al., Civil No. 11-7125 (SRC), in which this Court noted their record of non-cooperation and disciplinary actions that prompted legitimate MAP status.  Therefore, where Plaintiff cannot show that he has been subjected to retaliatory action related to his filing of grievances or this civil action, his retaliation claim will be dismissed without prejudice for failure to state a claim at this time.

V.  CONCLUSION

Therefore, for the reasons set forth above, this action will be dismissed without prejudice, in its entirety as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.  An appropriate order follows.


    s/ Stanley R. Chesler    
STANLEY R. CHESLER
United States District Judge


DATED: January 18, 2013

23